387 So.2d 943 (1980)
STATE of Florida, Appellant,
v.
Lee HAGAN, Jr. and James George Stephens, Appellees.
No. 56680.
Supreme Court of Florida.
September 4, 1980.
*944 Jim Smith, Atty. Gen., and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellant.
No appearance, for appellees.
SUNDBERG, Chief Justice.
Appellee Lee Hagan, Jr. was charged by information with using more than one trawl net in Charlotte Harbor, Florida, and with using a trawl with a net greater than twenty-five feet, contrary to chapter 76-343, section 1, Laws of Florida, as amended by chapter 77-525, section 1, Laws of Florida. Appellee James George Stephens was charged with violation of the same statute for pulling more than one twenty-five-foot net in Charlotte Harbor. Appellees filed motions to dismiss the charges on the ground that the statute was unconstitutionally vague in defining the proscribed conduct. Following a hearing on the motions, the trial court entered its order holding the statute unconstitutional. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution (1972).
Chapter 77-525, section 1, Laws of Florida, provides:
Section 1. No trawling operation shall use more than one trawl net which shall not exceed 25 feet in length, for the taking of shrimp in the Charlotte County waters of Charlotte Harbor, in the inland waters of the county, or within one-half mile of such inland waters.
The trial court found the special law unconstitutional for the following reasons:
1. [T]he special law is unconstitutionally vague for failure to identify with particularity the boundaries of the prohibited netting areas. The Court specifically finds that the terms "Charlotte County waters of Charlotte Harbor", "in the inland waters of the County", and "within one-half mile of such inland waters" are insufficient to allow the average person to readily identify the boundaries of the protected area;
2. [T]he special law is unconstitutionally vague for failure to define the terms "trawling operation" and "trawl net." Specifically, the law purports to prohibit certain activities of "trawling operations" and by implication would permit those same activities by other *945 than "trawling operations". The Court finds that the average person cannot be expected from a plain reading of the law to determine whether a contemplated activity would or would not constitute a "trawling operation" and whether a particular net is or is not a "trawl net";
3. [T]he special law is too vague to form the basis for a criminal prosecution of a natural person since it appears on its face not to proscribe any conduct of natural persons, but proscribes only certain activities of "trawling operations" without defining that term to include natural persons;
4. [T]he special law violates Article III, Section 11, (a)(19) of the Florida Constitution prohibiting special laws pertaining to fresh water hunting or fishing in that any reasonable interpretation of the term "inland waters of the County" would include fresh water areas[.]
Unfortunately, we have not been graced by a brief filed on behalf of appellees. We have, nonetheless, carefully considered the matter and conclude that the trial court erred in holding the special law unconstitutional.
First, we note that we are concerned only with the criminal provision with which appellees were charged, i.e., engaging in allegedly unlawful activity in the Charlotte County waters of Charlotte Harbor. Appellees may not challenge the constitutionality of a portion of the statute which does not affect them. State v. Hill, 372 So.2d 84 (Fla. 1979); Jordan v. State, 334 So.2d 589 (Fla. 1976); State ex rel. Hoffman v. Vocelle, 159 Fla. 88, 31 So.2d 52 (1947); Gill v. Wilder, 95 Fla. 901, 116 So. 870 (1928). Therefore, we do not consider the constitutionality of the statute insofar as it affects "inland waters of the county" or "within one-half mile of such inland waters." This disposes of the asserted infirmity based on violation of article III, section 11(a)(19), Florida Constitution, and of the asserted void-for-vagueness infirmity based on these statutory phrases.
In determining whether a statutory provision is so vague as to violate due process of law, we must consider whether the provision is so vague that men of common intelligence must necessarily guess at its meaning. Newman v. Carson, 280 So.2d 426 (Fla. 1973). The test of vagueness of a statute is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. Washington v. State, 302 So.2d 401 (Fla. 1974), cert. denied, 421 U.S. 918, 95 S.Ct. 1582, 43 L.Ed.2d 786 (1975). In applying these principles to the case before us, we conclude that the statutory terms "Charlotte County waters of Charlotte Harbor," "trawl net," and "trawling operation" are not so vague as to render chapter 77-525 unconstitutional on its face.
In concluding that these statutory terms rendered the special law unconstitutionally vague, the trial court relies in part on the failure of the legislature to define the terms within the statute itself. The legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague. In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense. See Tingley v. Brown, 380 So.2d 1289 (Fla. 1980); Milazzo v. State, 377 So.2d 1161 (Fla. 1979); Bellamy v. State, 347 So.2d 419 (Fla. 1977); Goldstein v. Acme Concrete Corp., 103 So.2d 202 (Fla. 1958). The prohibited netting area encompassed by the Charlotte County waters of Charlotte Harbor may be ascertained with particular exactitude by resort to pertinent Florida law. See § 7.08, Fla. Stat. (1979) (delineating the boundary lines of Charlotte County); art. II, § 1(a), Fla. Const. (defining the western boundary of the state of Florida as extending three leagues seaward from the Gulf of Mexico coastline). The appellees here are presented with no greater task than that generally *946 facing an individual in locating the physical boundaries of any jurisdiction to enable him to determine applicable law.
We also believe that the terms "trawl net" and "trawling operation" have a definite meaning as used in connection with the fishing industry. As to the term "trawl net," we note that Webster's Third New International Dictionary (3d ed. 1976), at page 1031, defines the term as "a large conical net with a device for keeping its mouth open that is dragged along the sea bottom in gathering fish or other marine life." A statute may satisfy due process requirements even though it contains general terms and does not furnish detailed plans and specifications of the act or conduct proscribed. Slaughter v. State, 301 So.2d 762 (Fla. 1974), cert. denied, 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975); Orlando Sports Stadium, Inc. v. State, 262 So.2d 881 (Fla. 1972).
We also reject the trial court's holding that the special law is void for vagueness on the basis it proscribes trawling operations without defining that term to include natural persons. Laws by their very nature regulate the activities of persons. Any trawling operation which is conducted or initiated by human agency is subject to the proscription of the special law.
Accordingly, we hold that appellees were validly charged with a criminal offense pursuant to chapter 77-525, Laws of Florida. The decision of the trial court below is reversed and this case is remanded to the trial court for proceedings not inconsistent with this decision.
It is so ordered.
ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.